UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERANCE CALHOUN,

        Plaintiff,

v.

City of Detroit Police Department Sergeant ROBERT KANE, Police Officer JOSE ORTIZ, Police Officer MICHELE JASKULKA, Commander JAMES TOLBERT, Lieutenant BILAL MUHAMMAD, JESSE DOE I, JESSE DOE II, and JESSE DOE III, in their official and/or individual capacities, jointly and severally,

        Defendants.

Case No. 24-CV-10184
Hon. Mark A. Goldsmith
Magistrate Judge David R. Grand

**PLAINTIFF'S MOTION TO QUASH THREE THIRD-PARTY SUBPOENAS**

---

Emma Freudenberger (NY 4624045)
Amelia Green (NY 5428412)
Rhianna Rey (NY 5814066)
Katherine Cion (DC 1779586)
*Attorneys for Plaintiff*
Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP
200 Varick Street, Suite 800
New York, New York 10014
P: (212) 965-9081
E: emma@nsbhf.com
   amelia@nsbhf.com
   rhianna@nsbhf.com
   kcion@nsbhf.com

Alfred Ashu (P82536)
Crystal B Olmstead (P69202)
Krystal A. Crittendon (P49981)
Christopher Michels (P83156)
Philip J. Hiltner (P77913)
*Attorneys for Defendants*
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
P: (313) 237-3089
E: AlfredA@Detroitmi.gov
   olmsteadc@detroitmi.gov
   critk@detroitmi.gov
   Christopher.michels@detroitmi.gov
   hiltnerp@detroitmi.gov

1

Julie H. Hurwitz (P-34720)
Kathryn Bruner James (P-71374)
*Attorneys for Plaintiff*
Goodman Hurwitz & James, P.C.
1394 E. Jefferson Avenue
Detroit, Michigan 48207
P: (313) 567-6170
E: jhurwitz@goodmanhurwitz.com
   kjames@goodmanhurwitz.com

---

## **PLAINTIFF'S MOTION TO QUASH THREE THIRD-PARTY SUBPOENAS**

Pursuant to this Court's Practice Guidelines for Motion Practice, the undersigned certifies that Plaintiff's counsel spoke to defense counsel during a telephonic meet and confer, explaining the nature of the relief that Mr. Calhoun seeks by way of this motion to quash. She further certifies that Plaintiff's counsel memorialized the nature of the relief sought in an email to defense counsel. Despite these discussions, Plaintiff's counsel has not been able to reach agreement with defense counsel regarding the nature and scope of the third-party subpoenas at issue. Per Local Rule 37.2, copies of the third-party subpoenas underlying this motion are attached as exhibits to the corresponding attorney declaration by the undersigned.

Plaintiff Terance Calhoun respectfully moves the Court for an order quashing Defendants' subpoenas to the following entities: (1) JPay Inc. ("JPay");

(2) Global Tel Link Corporation ("Global Tel Link"); and (3) the Michigan Department of Corrections ("MDOC")[1]. These invasive subpoenas are not proportional to the needs of the case, as they seek private information with minimal to no relevance to the disputed issues. They thus fail to meet the standard set forth in Federal Rule of Civil Procedure 26(b)(1) and should be quashed. Furthermore, defense counsel issued these subpoenas without properly noticing Plaintiff's counsel, prejudicing Mr. Calhoun. To the extent that the subpoenaed parties have already produced documents pursuant to the subpoenas at issue, Mr. Calhoun additionally moves for Defendants to destroy such documents as to put him in the same position as before these subpoenas were issued. In addition to the three subpoenas underlying the instant motion, defense counsel has failed to provide Plaintiff's counsel with proper notice for at least twelve subpoenas. To that end, Mr. Calhoun additionally seeks sanctions in the form of costs and attorneys' fees associated with raising the issue of notice with defense counsel and filing this motion, as well as an order that defense counsel provide twenty-four hours' notice—in compliance with Rule 45—before issuing subpoenas.

---

[1] Plaintiff agrees that Mr. Calhoun's DOC file and DOC medical and mental health files are discoverable and only seeks to quash the subpoena to the Michigan Department of Corrections to the extent that it seeks records beyond those contained in those files.

## BACKGROUND

Terance Calhoun was wrongfully convicted—at nineteen years old and with a severe cognitive disability—and spent fifteen years wrongfully incarcerated as a result of Defendants' coercion of his confession, planting of evidence, and use of unlawful suggestion to obtain false identifications. Due to his incarceration, Mr. Calhoun's connections to the outside world—whether through phone calls or electronic correspondence—were likely recorded and maintained by the Michigan Department of Corrections and its servicers, JPay and Global Tel Link. These entities also likely recorded and maintained records of his financial transactions and many other private details of his daily life.

On November 7, 2024, defense counsel, through their service vendor, Minute Man, notified Plaintiff's counsel that they planned to issue subpoenas to, among other entities, (1) JPay, (2) Global Tel Link, and (3) MDOC. *See* Attorney Decl. of Katherine Cion (herein "Decl."), Exs. B–D (herein "Ex."). Defense counsel did not provide Plaintiff's counsel with copies of the subpoenas themselves. On November 11, 2024, Minute Man served the subpoenas on Plaintiff's counsel and the third-party entities. *See id.* The subpoena to JPay requests "ANY/ALL DOCUMENTS, AUDIO RECORDINGS, VIDEOS, PHONE CALLS, TRANSCRIPTS, FROM 2006 TO 2022 . . . RE: TERANCE TERRILL CALHOUN." Ex. B. The subpoena to Global Tel Link requests "ANY/ALL

4

DOCUMENTS, EMAILS, VIDEOS, RECORDINGS, TEXT-BASED MESSAGES, PHOTOGRAPHS, ETC, SENT FROM OR RECEIVED BY, . . . FROM 2006 to 2022, TERANCE TERNILL CALHOUN." Ex. C. The subpoena to MDOC seeks Mr. Calhoun's "ENTIRE INSTITUTIONAL FILE, FROM 2006 TO 2022." Ex. D.

On November 12, 2024, the day after the subpoenas were served, Plaintiff's counsel objected to these third-party subpoenas both via email and during a telephonic meet and confer. *See* Decl. ¶ 4, Ex. E. On November 14, 2024, Plaintiff's counsel asked defense counsel to contact the third parties to let them know that Plaintiff's counsel had objected to the subpoenas. *See* Ex. F. Defense counsel declined to do so. *See* Ex. G. On November 18, 2024, Plaintiff's counsel emailed defense counsel further explaining the reasons for their objections to these subpoenas. *See* Ex. H. On November 20, 2024, defense counsel informed Plaintiff's counsel of their position that the records they sought were relevant to Mr. Calhoun's damages, but did not provide any additional explanation nor a more tailored position as to what sorts of relevant documents they believed would be produced in response to the subpoenas. *See* Exs. J–M. On December 2, 2024—the deadline for JPay's and Global Tel Link's subpoena responses—Plaintiff's counsel asked defense counsel to refrain from viewing any documents produced while the

5

instant dispute was pending before this Court. *See* Ex. N. Defense counsel did not agree. *See* Ex. O.

This is not the first time the defense has failed to provide proper notice. For example, on August 27, 2024, Defendants issued subpoenas to four individuals, including Plaintiff's post-conviction counsel, without issuing notice to Plaintiff's current counsel. *See* Decl. ¶ 17a, Ex. P. Plaintiff's counsel did not learn about these four subpoenas until Plaintiff's prior attorneys reached out to Plaintiff's current counsel weeks later. *See id.* Additionally, just recently, on December 9, 2024, Minute Man notified Plaintiff's counsel that it served a subpoena on five entities. *See* Decl. ¶ 17b, Ex. Q. It had not provided Plaintiff's counsel with notice before serving these entities. *See id.*

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs third-party subpoenas. The scope of permissible discovery "under a subpoena is the same as the scope of discovery under Rule 26." *In re Request for Jud. Assistance From Embassy of Arab Republic of Egypt*, No. 21-mc-51058, 2021 WL 6112131, at *3 (E.D. Mich. Dec. 27, 2021) (Goldsmith, J.). Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "the importance of the issues at stake in the action" and "the importance of the

discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). "If a party objects to the relevancy of information sought, . . . the party seeking the information bears the burden of showing its relevance." *Dassault Systemes, SA v. Childress*, No. 09-10534, 2013 WL 12181775, at *4 (E.D. Mich. Sept. 5, 2013) (collecting cases).

## ARGUMENT

Defendants cannot meet their burden to show that the broad files they requested from JPay, Global Tel Link, and MDOC are relevant to the litigation or proportional to the needs of the case, particularly considering Mr. Calhoun's privacy interests in at least some aspects of these records. Further, Defendants' insufficient notice of the third-party subpoenas has resulted in prejudice to Mr. Calhoun.

As a preliminary matter, Mr. Calhoun has standing to challenge the third-party subpoenas. Although, "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action," a party may move to quash where he "claims some personal right or privilege with regard to the documents sought." *Mann v. Univ. of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *4 (6th Cir. 1997) (unpublished table opinion) (internal quotation marks omitted). A party additionally has standing to challenge third-party subpoenas where the information sought concerns the party's "privacy interest[s]." *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 76.190.140.193*, No. 15-

cv-1342, 2015 WL 6758219, at *2 (N.D. Ohio Nov. 5, 2015); *see also Flagg v. City of Detroit,* No. 05-74253, 2008 WL 787039, at *4 n.8 (E.D. Mich. Mar. 20, 2008) (holding that a party has standing to challenge third-party subpoenas where their "overbreadth . . . threatens to unduly invade the privacy and other rights of" that party). Even a "minimal privacy interest in the information requested by the subpoena . . . is sufficient for the purposes of standing." *Malibu Media*, 2015 WL 6758219, at *2.

"Personal rights or interests sufficient to confer standing to quash a subpoena can arise in a variety of contexts." *Sys. Prod. & Sols., Inc. v. Scramlin*, No. 13-cv-14947, 2014 WL 3894385, at *7 (E.D. Mich. Aug. 8, 2014) (Goldsmith, J.) (a party has a personal interest in subpoenaed personnel files containing personal contact information and banking records); *see also Howlett v. City of Warren*, No. 17-11260, 2018 WL 4537193, at *2 (E.D. Mich. Sept. 20, 2018) (a party has a personal interest in subpoenaed personal emails and phone records); *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, No. 07-14124, 2008 WL 2980089, at *1 (E.D. Mich. July 31, 2008) (a party has "an important personal interest" in subpoenaed "medical records and employment records").

Other district courts to have specifically addressed the privacy interests of incarcerated individuals have held that they have standing to move to quash third-party subpoenas seeking phone-call recordings, medical and mental-health records,

8

and grievance records. *See, e.g.*, *DeLeon-Reyes v. Guevara*, No. 18-cv-01028, 2020 WL 7059444, at *2 (N.D. Ill. Dec. 2, 2020) (holding that "an incarcerated individual possesses a sufficient privacy interest in the recordings of [his] phone calls, such that [he] has standing to quash a subpoena for those recordings" and collecting cases); *Carpenter v. Kloptoski*, No. CIV.A 08-cv-2233, 2010 WL 126173, at *1 (M.D. Pa. Jan. 8, 2010) (holding that an inmate had standing to challenge a subpoena seeking his "medical and mental health records and grievance documents"). These subpoenas seek, at least in part, phone-call recordings and/or other communications and correspondence and financial information. *See* Exs. B–D. The subpoena for the entirety of the MDOC file will likely contain additional personal information, which may include medical and mental-health records. *See* Ex. D.

Where a plaintiff has established standing to object to a third-party subpoena, as here, "it is proper for the Court to consider Plaintiff/Intervenor's objections to the subpoenas on relevancy grounds or grounds involving her personal privacy." *Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 2008 WL 2980089, at *1. Here, the information sought is—at best—minimally relevant. The decade-and-a-half's worth of phone-call recordings, correspondence, and commissary and financial records likely to be produced pursuant to these three subpoenas do not go to the questions of liability at the heart of this case. Rather,

9

this case turns on whether Defendants coerced Mr. Calhoun's confession, planted evidence, and used improper suggestion to garner witness identifications. Indeed, Defendants have refused to justify their overbroad subpoena requests, merely informing Plaintiffs when pressed, that the subpoenaed "entities possess information related to Plaintiff's incarceration" and that "Plaintiff is seeking damages from Defendants related to his incarceration." *See* Ex. K. But if a jury finds in Mr. Calhoun's favor that Defendants caused his wrongful conviction and incarceration, it is hard to imagine how anything Mr. Calhoun said in a private phone call or via JPay correspondence, for example, could somehow diminish the damages he suffered for fifteen years of lost liberty.

Rule 26 additionally emphasizes "proportionality as [its] governing principle." *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (quoting Neil M. Gorsuch, *A Republic, If You Can Keep It* 260 (2019)). It is for precisely this reason that "[c]ourts have long condemned omnibus 'any and all' document requests," like the three subpoenas at issue. *Quarles v. Zero Mass Water, Inc.*, No. CV 20-12852, 2021 WL 5761729, at *1 (E.D. Mich. May 5, 2021) (collecting cases).

Mr. Calhoun has already produced extensive documentary evidence of his damages and will continue to do so via expert discovery. For example, Defendants have received over 6,500 pages of Mr. Calhoun's medical and mental-health

10

records kept by MDOC during the time he was incarcerated, his post-release healthcare records, and his school records. Defendants will also have an opportunity to depose Mr. Calhoun.

At trial, Mr. Calhoun will present evidence of his emotional pain and suffering during his fifteen years in maximum security prison for a crime he did not commit. To be sure, Mr. Calhoun's phone calls in prison may have information Plaintiff could use to illustrate the emotional suffering he experienced in prison. But Plaintiff does not obtain these records and will not seek them unless Defendants are permitted to use them. And Defendants have not articulated how, if at all, fifteen years of communications and payment records while incarcerated could be probative of any damages *defense*. The only marginal benefit Plaintiff can conceive would be in the event Defendants' overbroad subpoenas covering a fifteen-year time period results in the production of private calls and correspondence that they can use to humiliate or embarrass Mr. Calhoun. Given the interests at stake, any such marginal relevance that Plaintiff's private phone calls, correspondence, or financial transactions may have to the question of damages is outweighed by the potential harm of their disclosure. *See Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *7 (N.D. Ill. Oct. 20, 2020) ("Using such a wide net, the Court has little doubt that Defendants would catch at least a few recordings they would say might be useful for their cross-examination of

Plaintiff at trial, or to challeng[e] Plaintiff's claimed damages from . . . long years of . . . detention. But the question is not only whether a broad search of Plaintiff's calls would possibly uncover relevant information, but also whether such a search is proportional to the needs of the case.").

Courts have rejected similarly broad and untailored requests for prison records on privacy grounds, including requests for call recordings. *See, e.g.*, *DeLeon-Reyes*, 2020 WL 7059444, at *5–6. For example, in denying a motion to compel a third party's production of "the recordings of all calls that" a wrongfully incarcerated plaintiff "made from prison," one court held that it would "not permit such an intrusion into [plaintiff's] privacy absent a more thorough showing of relevance and proportionality." Ex. R (*Thorpe v. City of Philadelphia*, No. 19-cv-5094, ECF No. 135, at 1 n.1 (E.D. Pa. April 6, 2022)).

Further, defense counsel failed to properly notice the three subpoenas, resulting in prejudice to Mr. Calhoun. "Rule 45 states that '[i]f the subpoena commands the production of documents, electronically stored information, or tangible things . . . , then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.'" *In re Request for Jud. Assistance*, 2021 WL 6112131, at *2 (quoting Fed. R. Civ. P. 45(a)(4)). "The purpose of this provision is to provide an opposing party a chance to object to the subpoena." *Id.* Though courts in the Sixth Circuit may "enforce[] subpoenas

even if there is technical noncompliance with Rule 45," *id.*, where a party "ha[s] not necessarily been harmed by" this noncompliance, it still constitutes a "technical defect that weighs in favor of quashing," *Katebian v. Missaghi,* No. CV 18-13379, 2019 WL 1422618, at *1 (E.D. Mich. Jan. 10, 2019). But in any event, defense counsel's unwillingness to meaningfully acknowledge Plaintiff's counsel's objections has resulted in prejudice beyond a mere technicality.

As detailed above, defense counsel has outsourced subpoenas to a vendor, Minute Man. On November 7, 2024, Minute Man provided Plaintiff's counsel with notice that it would issue subpoenas to JPay, Global Tel Link, and MDOC. *See* Ex A. The notice merely listed the names of each third-party entity but did not include a rider outlining the categories of documents sought. *See id.* Plaintiff's counsel did not receive copies of the subpoenas until they were served on the third parties on November 11, 2024, and, accordingly, learned of the documents requested on that date. Plaintiff had no notice of the scope of the subpoenas before they were served on the recipients. In the interim between receiving copies of the subpoenas on November 11, 2024, and notifying the Court of the instant dispute, Plaintiff's counsel attempted to resolve the issue without the Court's involvement. *See* Exs. E–M. After Plaintiff's counsel informed defense counsel that they would object to the three subpoenas, defense counsel refused to alert the subpoena recipients of Plaintiff's objections and inform them that they should not respond until these

13

objections were considered by the Court. *See* Exs. F–G. Furthermore, Plaintiff's counsel asked defense counsel to agree to refrain from viewing any documents it received pursuant to these subpoenas while the instant matter is pending before the Court, but defense counsel declined. *See* Exs. N–O.

Defense counsel's failure to provide proper notice and subsequent unwillingness to allow the Court to weigh in on Mr. Calhoun's objections before subpoena compliance takes place has resulted in a highly prejudicial situation. While Plaintiff's counsel is unaware as to whether defense counsel has received any documents pursuant to these subpoenas, the deadlines for all three subpoenas have now passed. Thus, that these third parties have already complied with or will comply with defense counsel's requests before the Court is able to render a decision on this motion is highly likely.

Despite Plaintiff's counsel's own efforts to contact the subpoena recipients to alert them of Plaintiff's objections, they have thus far been unreachable. *See* Decl. ¶ 8. This is, thus, *not* an instance in which a mere technical violation of Rule 45's notice requirement occurred but did not result in prejudice. *See McClendon v. TelOhio Credit Union, Inc.*, No. 05-cv-1160, 2006 WL 2380601, at *3 (S.D. Ohio Aug. 14, 2006) (holding that, unlike here, a party was not prejudiced by the opposing party's failure to properly notice subpoenas where "the parties were able to agree that [third parties] who had not produced documents by the time the

14

motion to quash was filed could wait until the motion was decided, and that any documents received . . . would not be viewed until that date"). The subpoenas should be quashed in light of this prejudice to Mr. Calhoun.

To restore Mr. Calhoun to the position he would be in had Defendants not issued their overbroad, duplicative, disproportionate, and prejudicial subpoenas, he additionally seeks an order from the Court instructing Defendants to delete or destroy any responsive documents they received pursuant to the subpoenas at issue. *See, e.g., Cunningham v. Jordan*, No. 22-CV-1419, 2024 WL 998826, at *2 (N.D. Ga. Feb. 20, 2024) (quashing third-party subpoenas to financial institutions and further ordering a party "to immediately and permanently delete and destroy any and all private banking information that he [already] has or will acquire by serving subpoenas on non-parties"); *Paul v. Syndicated Off. Sys., Inc.*, No. 12-61547-CIV, 2013 WL 11971284, at *1–2 (S.D. Fla. May 10, 2013) (granting a plaintiff's motion to quash a third-party subpoena on the grounds that it is overbroad and ordering the defendant to "destroy any portions of those documents" already produced that are not responsive to a more tailored, reissued subpoena).

Finally, defense counsel's pattern of issuing subpoenas without first notifying Plaintiff's counsel cannot be brushed off as an accident or "simple clerical error." *Dupuis v. City of Hamtramack*, No. 06-cv-14927, 2007 WL 4201132, at *1 (E.D. Mich. Nov. 28, 2007). Defense counsel has now failed to

15

properly notice Plaintiff's counsel of at least *twelve* subpoenas—the three at issue in this motion, the four issued on August 27, 2024, and the five noticed on December 9, 2024. *See* Decl. ¶ 17, Exs. P–Q. As early as September 20, 2024, Plaintiff's counsel wrote to defense counsel raising the issue of notice and requesting that, moving forward, defense counsel provide Plaintiff's counsel with proper notice at least one day before the subpoenaed party is served. *See id.* ¶ 17a, Ex. P. Where counsel has "violated the clear language of Rule 45(b)(1)," has been alerted to this violation by the opposing party, and yet continues to violate Rule 45, "the other part[y is] entitled to recover . . . the costs and attorney fees incurred in connection with the subpoenas and this motion." *Dupuis*, 2007 WL 4201132, at *3. Thus, Mr. Calhoun asks the Court to order defense counsel to pay the costs and fees associated with this motion and his counsels' prior efforts to address defense counsel's improper notice. Additionally, Mr. Calhoun asks the Court to issue an order requiring defense counsel to provide twenty-four hours' notice, in compliance with Rule 45, before issuing a third-party subpoena. *See McGarvey v. K-Mart Corp.*, No. CIV. A. C-1-91-487, 1993 WL 512622, at *1 (S.D. Ohio Aug. 26, 1993).

## **CONCLUSION**

Defendants have not provided a single basis to compel expansive discovery of all of Mr. Calhoun's phone records and recordings, correspondence, commissary

and financial information, and other personal information while he was wrongfully incarcerated. Although Defendants may well like to rifle through thousands of Mr. Calhoun's personal documents, the Federal Rules limit discovery to relevant evidence and do not authorize frivolous expeditions that are not proportionate to the needs of the case. Additionally, Defendants' failure to serve copies of the subpoenas to Mr. Calhoun in advance of service on the third parties has resulted in undue prejudice. For these reasons, Mr. Calhoun respectfully requests that the Court grant his motion to quash Defendants' subpoenas to JPay, Global Tel Link, and MDOC. He further requests that any documents already produced pursuant to these subpoenas be destroyed, to restore him to the position he occupied before Defendants issued these subpoenas. Finally, he asks that—due to defense counsel's repeated disregard for Rule 45's notice requirement—the Court award him attorneys' fees and costs for the filing of this motion and related activity, as well as order Defendants to provide twenty-four hours' notice before issuing a subpoena.

Dated: December 23, 2024

/s/ Emma Freudenberger
Emma Freudenberger (NY 4624045)
Amelia Green (NY 5428412)
Rhianna Rey (NY 5814066)
Katherine Cion (DC 1779586)
Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP
200 Varick Street, Suite 800
New York, New York 10014
(212) 965-9081

                                      Julie H. Hurwitz (P-34720)
                                      Kathryn Bruner James (P-71374)
                                      Goodman Hurwitz & James, P.C.
                                      1394 E. Jefferson Avenue
                                      Detroit, Michigan 48207
                                      (313) 567-6170
                                      *Attorneys for Plaintiff*

## PROOF OF SERVICE

The undersigned states that on this day, December 23, 2024, she has served a copy of the foregoing response utilizing the court's electronic mail system which will forward a copy of same to all attorneys of record.

<div style="margin-left: 2em;">
/s/ Jackie Ochoa Acevedo
Paralegal
Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP
</div>