UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TERANCE CALHOUN,** by and through
his legal conservators, Octavia Monroe and
Theodore W.Goodman**,**

                Plaintiff,

Grand
v.

**City of Detroit Police Department Sergeant ROBERT KANE,
Police Officer JOSE ORTIZ, ~~Police Officer MICHELE
JASKULKA, Commander JAMES TOLBERT~~, Lieutenant BILAL
MUHAMMAD, ~~JESSE DOE I, JESSE DOE II, and JESSE DOE III~~**,
in their official and/or individual capacities, jointly and severally,

                Defendants.

Case No.: 24-cv-10184
Hon. Mark A. Goldsmith
Magis. Judge David R.

---

| | |
|---|---|
| **Emma Freudenberger (NY 4624045)**<br>**Amelia Green (NY 5428412)**<br>**Rhianna Rey (NY 5814066)**<br>**Elsa Mota (NY 5949474)**<br>**Neufeld Scheck Brustin Hoffmann &**<br>**Freudenberger, LLP**<br>Attorneys for Plaintiff<br>200 Varick Street, Suite 800<br>New York, New York 10014<br>(212) 965-9081<br><br>**Kathryn Bruner James (P71374)**<br>**Julie H. Hurwitz (P34720)**<br>**Huwaida Arraf (NY 4707220)** | **Krystal A. Crittendon (P49981)**<br>**Crystal Olmstead (P69202)**<br>**Alfred Ashu (P82536)**<br>**Christopher Michels (P83156)**<br>**City Of Detroit Law Department**<br>Attorneys for Defendants Michele<br>Jaskulka, Jose Ortiz and Robert Kane<br>Coleman A. Young Municipal Center<br>2 Woodward Ave., Ste. 500<br>Detroit, MI 48226<br>(313) 237-3031<br>Critk@detroitmi.gov<br>Olmsteadc@detroitmi.gov<br>Alfreda@detroitmi.gov<br>Christopher.michels@detroitmi.gov |

i

**Goodman Hurwitz & James,
P.C.**
1394 E. Jefferson Ave,
Detroit, Michigan 48207
(313) 567-6170

---

## Defendants' Renewed Motion to Strike Expert Testimony of Ruth Ballard, Kyle Scherr, and Jennifer Dysart

Defendants, through the undersigned counsel, states the following in support of their motion:

1. Dr. Ruth Ballard's expert testimony regarding DNA does not meet the criterion set forth in Federal Rule 702 because it makes unscientific and unwarranted assumptions, does not provide useful information, and will confuse the jury.

2. Dr. Kyle Scherr's expert testimony regarding false confession does not meet the criterion set forth in Federal Rule 702 and he has previously been precluded from giving this testimony because it assumes facts not present in this case, has no scientific basis, does not provide useful information, and will mislead the jury.

3. Dr. Jennifer Dysart's expert regarding eyewitness identification does not meet the criterion set forth in Federal Rule 702 because it is based on assumptions of facts that have no evidence,  is not a

does not relate to any claim in this case, is not useful information, and will mislead the jury.

4. The undersigned certifies that counsel personally spoke to opposing counsel on May 21, 2025, and again on April 2, 2026, explained the nature of the relief to be sought by way of this motion and seeking concurrence in relief; opposing counsel expressly denied concurrence.

Respectfully submitted,

/s/ *Christopher Michels*
Christopher Michels (P83156)
City of Detroit Law Department
Attorney for Defendants

iii

## Questions Presented

1. Should this Court strike the testimony of Ruth Ballard regarding DNA because it is untimely, not useful to the jury, and based on unscientific assumptions?

    **Defendant's Answer: Yes**

2. Should this Court strike the testimony of Kyle Scherr regarding Plaintiff's voluntary confession because the supplement was untimely, and all of the testimony is not useful to the jury and based on unscientific data of which there is no factual support?

    **Defendant's Answer: Yes**

3. Should this Court strike the testimony of Jennifer Dysart regarding the identification of Plaintiff as the assailant of B.H. and M.V. because it is not useful to the jury because the witnesses have never recanted, was waived, and it is based on unscientific data?

    **Defendant's Answer: Yes**

iv

## Table of Authorities

**Rules**

Federal Rule of Evidence 702

Federal Rule of Evidnce 403

**Cases**

*Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985)

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)

*District Attorney's Office for Third Judicial Circuit v. Osbourne*,
   557 U.S. 52 (2009)

*Herrera v. Collins*, 506 U.S. 390 (1993)

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)

*Lech v. Gettel*, Case No. 23-1753 (6th Cir. 2024) *available at*
   2024 WL 2815971

*Matthew v. Johnson*, 201 F.3d 353 (5th Cir 2000)

*Miller v. Gettel*, Case No. 22-1034 (6th Cir. 2023) *available at*
   2023 WL 2945340

*People v. Krivik*, 78 Misc.3d 988 (N.Y. County Ct. 2023)

*People v. New*, 398 N.W.2d 358, 360-363 (Mich. 1986).

*Perry v. New Hampshire*, 565 U.S. 228 (2012)

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014)

*Rolen v. Hansen Beverage Co.*, 193 Fed.Appx. 468 (6th Cir. 2006)

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)

*United States v. Deuman*, 892 F.Supp.2d 881 (W.D. Mich. 2012)

*United States v. Ruiz*, 536 U.S. 622 (2002)

*United States v. Sammon*, 535 F.Supp.3d 697 (S.D. Ohio 2021)

*United States v. Wolczik*, 480 F.Supp. 1205 (W.D. Pa. 1979)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**TERANCE CALHOUN,** by and through
his legal conservators, Octavia Monroe and
Theodore W.Goodman**,**

Case No.: 24-cv-10184

Plaintiff,

Hon. Mark A. Goldsmith
Magis. Judge David R. Grand

v.

**City of Detroit Police Department Sergeant ROBERT KANE,
Police Officer JOSE ORTIZ, Police Officer MICHELE
JASKULKA, Commander JAMES TOLBERT, Lieutenant BILAL
MUHAMMAD, JESSE DOE I, JESSE DOE II, and JESSE DOE III**,
in their official and/or individual capacities, jointly and severally,

Defendants.

---

## Brief in Support

Plaintiff's guilt or innocence is not at issue, at least as to it relates to Defendants' purported liability. Plaintiff seeks to introduce purported expert witnesses to confuse the jury and litigate Plaintiff's innocence instead of submitting direct evidence of malfeasance by Defendants Kane and Ortiz.

On March 25, 2026, this Court entered an order granting in part and denying in part Defendants' motion for summary judgment. *See* ECF No. 135. The order narrowed the issues for a potential trial and further provides support to Defendants' present motion as the proposed

7

expert testimony will not be useful to the jury in adjudicating the remaining issues of this case. Specifically, all of Plaintiff's witnesses see

Plaintiff disclosed three purported expert witnesses that do not meet the criterion for expert testimony under Rule 702. Dr. Ballard's report was not Rule 26 compliant. Dr. Scherr's report is speculative and not useful to the jury. Dr. Dysart's report is speculative, not useful to the jury, and the Court has already dismissed any claims of a suggestive identification procedure. Because the criterion under Rule 702 are not met and none of the witnesses have personal knowledge relating to the facts of this case, this Court should preclude testimony of Ruth Ballard, Kyle Scherr, and Jennifer Dysart.

Rule 702 requires this Court to weigh the testimony of a purported expert to demonstrate they meet the following criterion: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. The Court must perform a

8

"gatekeeping" role in weighing whether the purported expert testimony will be useful to the factfinder. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Plaintiff's purported experts of Ballard, Scherr, and Dysart will not help the jury to understand the evidence of this case, none are based on reliable scientific methods, and their testimony will distract the jury from the issue of this case. Finally, this Court has dismissed claims of a suggestive identification procedure and Dr. Dysart's testimony is wholly irrelevant.

## I.    Dr. Ballard's testimony should be stricken

Dr. Ballard is a purported expert in DNA evidence. The DNA evidence in this case was originally reviewed by Reliagene Technologies in 2007, after Plaintiff pled no contest. ECF No. 106-25 and Exhibit 1. This report reveals that neither Mr. Calhoun nor the victim's DNA was on the used condom that was tested. The DNA of Lionel Wells appears on the condom as well as an unknown female.

There are 13 "loci" or pairs of chromosomes in the DNA analyzed in this case. When looking at the minor contributor DNA on the

9

condom, i.e. not Mr. Wells's DNA, there are distinct loci to be found. The Innocence Project memorandum prepared on behalf of Mr. Calhoun provides insights on the DNA results. Seven loci do not match Mr. Calhoun or B.H. *See* Exhibit 1 and Exhibit 2. One loci of the thirteen tested was only possibly consistent with B.H. To account for the unknown DNA, Dr. Ballard speculates or assumes that there *could be* a third contributor, even though there is no evidence or testimony that a third person interacted with the condom. She states only in conclusory terms that someone could have contaminated the condom. If this contrafactual conclusion is accepted as true, then the entire exculpatory value of the condom is necessarily refuted.

The DNA was retested on March 31, 2022, by the Michigan State Police. *See* Exhibit 3. Their analysis confirms what was already discovered, that Mr. Wells's DNA appears on the condom as well as one unknown female that is definitively not B.H. The forensic scientist from MSP, Cassandra DeRuitter, was deposed twice and unequivocally stated B.H. was excluded as a contributor to DNA on the condom. Neither Reliagene nor MSP are retained by Defendants and independently made their determinations that there was not DNA from

B.H. Plaintiff's purpose in retaining Dr. Ballard is to have someone for the first time propose the unscientific idea that the DNA *could be* B.H. if the factfinder ignores all of the evidence that it is not her.

### A. The witness disclosure was untimely

This Court ordered Plaintiff provide expert disclosures by March 13, 2025. *See* ECF No. 26. Plaintiff did not disclose Dr. Ballard's full "report" along with her CV until April 22, 2025. *See* Exhibit 4. This was almost two weeks after Defendant's expert disclosures were due. Defendant's expert, Dr. Miller, was not provided with the attachment to Plaintiff's purported expert report and Defendants were severely prejudiced by the piecemeal disclosures by Plaintiff. This ground alone is sufficient to strike Dr. Ballard's testimony.

### B. Dr. Ballard's testimony is not useful to any fact of this case because Defendants were never required to disclose the information even if they possessed it.

The issue in this case is whether Defendants failed to turn over exculpatory DNA evidence. The Supreme Court has made clear that no state actor has a duty to turn over exculpatory DNA evidence after the conviction as long as there are adequate post-conviction procedures to obtain the DNA evidence. *District Attorney's Office for Third Judicial*

11

*Circuit v. Osbourne*, 557 U.S. 52 (2009). This is because once "a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Id.* at 69 quoting *Herrera v. Collins*, 506 U.S. 390, 399 (1993). Notably, the *Osbourne* case relied on by the parties and this Court came out in 2009, two years *after* Plaintiff's conviction. In 2007, the Sixth Circuit had already specifically ruled there was "no procedural due process right to post-conviction DNA testing." *Alley v. Key*, Case No. 06-5552 (6th Cir. May 14, 2006) *available at* 2006 WL 1313364 at *2; *Taylor v. Simpson*, Case No. 06-cv-181 (E.D. Ky. Jan. 17, 2007) *available at* 2007 WL 141052 at *10.

This Court has allowed for the post-conviction due process claim to continue to trial. *See* ECF No. 135, PageID. 6564. The Court has also determined that the DNA report is "material to Calhoun's guilt or innocence, as it was relied upon in the reinvestigation of Calhoun's convictions and was the basis of the vacatur order." ECF No. 135, PageID. 6564. The sole purpose of Dr. Ballard's testimony is to suggest that the DNA report supports Plaintiff's claim of innocence. The Court has already ruled on this issue. Now, the only thing left for the jury to

12

assess is whether Defendants received this DNA report, whether they intentionally withheld it from the prosecutor, and whether these alleged actions were the proximate cause for convicting Plaintiff. Dr. Ballard's testimony has no bearing on these issues, Defendants could not have known about her report, will not be useful to jury, and therefore should be excluded.

C. **Dr. Ballard's opinion relies on the baseless assumption that there were three DNA contributors on the condom**

Dr. Ballard arbitrarily assumed three contributors to explain the unknown DNA, rather than testing whether two contributors sufficiently account for the DNA mixture. This *post hoc* assumption is not a scientifically validated method but a means to justify the presence of DNA from an unknown female that is not B.H. The assumption lacks objective thresholds or criteria, and no empirical basis is provided for choosing "three" contributors instead of two, four, etc. Both Reliagene and Michigan State Police assumed two contributors. *See* Exhibits 1 and 3. This is a logical assumption given the allegations in the criminal case were that only two people touched the condom.

The Scientific Working Group on DNA Analysis Methods (SWG-DAM) has set up guidelines for the interpretation of mixed sample

13

DNA. *See* Exhibit 7. Specifically, if assumptions are made as to the number of contributors, additional information such as the number of alleles at a given loci and the relative peak heights should be used to justify the assumption. Exhibit 7 at 3.5.2.2. The 2007 Reliagene report did analyze thirteen specific loci. Exhibit 1. The report found two contributors. *Id.* The Innocence Project also summarized the findings with the analyzed loci and notes indicating for each "*does not match victim or T. Calhoun. Sample is single male and single female contributors.*" Exhibit 3 (emphasis added).

Dr. Ballard offers no evidence that there are three sets of alleles on any given loci and so there is no evidence of three contributors. Dr. Ballard's assumption is clearly meant to obtain a certain conclusion; that B.H. *could* have her DNA on the condom, no matter how improbable. This is not a scientific principle. Dr. Ballard's report states only that "statistical support for the inclusion of the Victim increased" to be the DNA of the victim, B.H. Contrary to the probabilistic approach used by the Michigan State Police when excluding B.H. as a contributor, Dr. Ballard's conclusion is not using a quantifiable amount,

just that by excluding all of the evidence that the female DNA contributor is not B.H., it becomes *more likely* that it is B.H.

Federal Rules 702 and 403 bar expert testimony that is speculative or risks confusing the jury. Dr. Ballard's testimony is based on speculation and misleads the jury into assessing whether Plaintiff was innocent and not whether Defendants violated his constitutional rights. Therefore, the testimony should be stricken. Moreover, her initial report is not Rule 26(f) compliant and her supplemental report was untimely.

## II.    Dr. Kyle Scherr's testimony should be stricken

Dr. Scherr is a psychologist whose purported testimony will be regarding the voluntariness of Plaintiff's confession. Dr. Scherr did not interview Plaintiff, did not review Plaintiff's testimony, and his report makes assumptions that have no evidentiary support.

The competency of Plaintiff to voluntarily confess was addressed in 2007 by Dr. Balay per court order. *See* Exhibit 8. She interviewed Plaintiff, ran tests on Plaintiff, and concluded he was competent and his confession was voluntary. *Id.* The Court accepted this finding and Plaintiff pled no contest to the crimes he was charged with committing.

15

Plaintiff waived any claim that the voluntarily confessed. *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002); *People v. New*, 398 N.W.2d 358, 360-363 (Mich. 1986).

Dr. Scherr's purported testimony is not about whether Plaintiff's specific confession was voluntary but about false confessions generally in the hopes the jury will be confused and sympathetic. This type of testimony has been excluded in this Circuit. See e.g., *United States v. Deuman*, 892 F.Supp.2d 881, 884-886 (W.D. Mich. 2012) (excluding an expert in false confessions because it is "nothing more than guesswork"); *United States v. Sammon*, 535 F.Supp.3d 697, 704-709 (S.D. Ohio 2021) (excluding an expert in false confessions because the testimony "does little more than vouch" for the credibility of a the criminal defendant).

**A. Dr. Sherr's report was untimely**

Dr. Sherr submitted a "rebuttal and supplement" on May 12, 2025, long after the deadline for disclosures. *See* Exhibit 9. This Court should strike this report and prohibit Dr. Scherr from testifying regarding his rebuttal and supplemental opinions.

**B. Dr. Sherr's testimony is not based on established scientific principles and will not be useful**

16

Dr. Scherr's testimony will not be useful to the jury. The Supreme Court has laid out the factors to consider when determining whether a confession is voluntary. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Dr. Scherr's analysis goes beyond what the Court has deemed to be appropriate factors. Dr. Scherr opines about the lack of audio or visual recordings of Mr. Calhoun's confession. Exhibit 10 at p. 10-11. This is completely irrelevant to the voluntariness of Mr. Calhoun's confession and only seeks to confuse the jury by suggesting impropriety even though there is no legal requirement that a confession be recorded, especially in 2006. The City of Detroit is not a party and Defendants are not responsible for the fact that the interrogation was not recorded. Dr. Scherr has been specifically precluded from testifying as an expert regarding this topic in a previous criminal case. See *People v. Krivik*, 78 Misc.3d 988, 999-1000 (N.Y. County Ct. 2023). The Court specifically held that "the neglect to record is not a factor or circumstance that might induce a false confession." *Id.* at 1000.

Dr. Scherr's report also opines on the police investigation. Exhibit 10 at 11-12 and 14. This testimony is not useful as a psychologist has no qualifications to opine regarding police investigation techniques. The

opinions are not based on scientific knowledge but are simply musings and lay opinions regarding the investigation by Defendants. For example, Dr. Scherr indicates his belief that Mr. Calhoun should have had a condom in his possession when he was arrested if his statement to the police about carrying condoms. Exhibit 10 at p. 12. This is not a scientific statement but an unnecessary observation made decades after the fact by someone with no personal knowledge.

Dr. Scherr also opines regarding "promises of leniency" even though there is no evidence of a promise of leniency. The only cited material for this discussion is an interrogation manual and not a psychological source. Exhibit 10 at p. 6-7. In fact, Plaintiff testified at his deposition that he was not given a promise of leniency. Dr. Scherr suggests that officers should not offer leniency to a person confessing. There is no scientific or legal basis for this viewpoint and no evidence to suggest Mr. Calhoun was promised anything for confessing.

Dr. Scherr further opines on "contamination" by police officers providing information to the confessing person. Exhibit 10 at p. 13-14. There is no evidence in this case that Officer Kane provided information to Plaintiff. In fact, Plaintiff admitted at his deposition that he knew

18

the facts of the crime. His confession also includes information about other persons that Officer Kane did not know. Exhibit 11. There was no "contamination."

Dr. Scherr was allowed to testify to this purported factor in the *Krivik* case, however, there was actual evidence of the police giving information to the confessor. 78 Misc.3d at 995. There is no evidence in the present case and, therefore, Dr. Sherr should not be permitted to opine on hypothetical contamination.

Dr. Scherr lastly discusses a connection between false confessions and guilty pleas. Exhibit 10 at p. 7-8 and 15. No scientific basis is utilized. Dr. Scherr has no personal knowledge but makes assumptions that Mr. Calhoun's attorney recommended he take a plea deal and she did not know about the existence of the DNA evidence. Exhibit 10 at p. 15. Dr. Scherr has no way to know this and his opinion is not based on psychology but by mere speculation about a deceased attorney that cannot testify.

The testimony will not be useful to the jury. It is only meant to confuse the issue. Plaintiff wants to introduce evidence that there was not a thorough investigation into the assaults of B.H. and M.V. This is

19

not relevant to Plaintiff's claims of a constitutional violation because there is no constitutional right to a thorough investigation. Plaintiff also wants to produce evidence of why Mr. Calhoun confessed and pled no contest. Dr. Scherr did not use reliable psychological principles or methods to explain it or even examine Mr. Calhoun. Instead, Dr. Scherr discusses irrelevant aspects of the criminal case to jump to the conclusion that his confession was not voluntary. Dr. Scherr's testimony should be stricken in its entirety. Alternatively, this Court should adopt an analysis similar to the Court in *Krivik* and limit Dr. Scherr's testimony to factors that were present in this case and not allow speculation as to factors that were not.

## III.   Dr. Dysart's expert testimony should be stricken

Dr. Dysart is a purported expert in eyewitness identification. Her report can be summarized that eyewitness testimony is not reliable and that the identification procedures from Defendant were suggestive. *See* Exhibit 12. Dr. Dysart has no personal knowledge of the identification procedures and neither B.H. nor M.V. has recanted their identification of Mr. Calhoun as their assailant. Moreover, the show-up attorney representing Mr. Calhoun's interests at the show up, attorney Daniel

20

Finwall, testified there was no suggestion in the process. Dr. Dysart did not review the testimony of Mr. Finwall.

Dr. Dysart discusses identification generally and took a study of 53 participants to see if they believe Mr. Calhoun looks like Mr. Wells and whether Mr. Calhoun looks like the composite photograph created by B.H. *See* Exhibit 12 at p. 19-23. Dr. Dysart opines that both B.H. and M.V. could not have coincidentally picked out Mr. Calhoun as their assailant. The testimony relies on the faulty syllogism that if one assumes that Mr. Calhoun is innocent, then victims must have been forced to pick him out of a lineup. The law does not require an eyewitness identification be 100% accurate, it only requires that Defendant be able to challenge the witness's identification at trial. Plaintiff, and everyone else involved in the criminal trial process, did not see anything wrong with the identifications B.H. and M.V. and a no contest plea was entered.

Dr. Dysart's testimony will not be useful to the jury because the issue of whether B.H. or M.V. were correct to identify Plaintiff as their attacker is not at issue. The issue is whether the identification was done suggestively. The Supreme Court has made clear it is for the

criminal court and ultimately the criminal jury to determine if an identification was done suggestively. *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). See also *Smith v. Perini*, 723F.2d 478, 482 (6th Cir. 1983) ("A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification."). Plaintiff in this case waived any argument relating to whether the identification procedures were constitutionally impermissible when he pled no contest.

Moreover, this Court has dismissed any claim of a fabricated or suggested photo lineup. ECF NO. 135, PageID. 6575-6578. This Court specifically dismissed Dr. Dysart's purported evidence that just because "it is possible that Calhoun was selected due to external influences including verbal and non-verbal suggestions during the identification procedure . . . does not point to any evidence that Ortiz was the 'external influence." ECF No. 135, PageID. 6578 (internal citations omitted). Plaintiff seeks to achieve through speculative testimony of Dr. Dysart what he could not achieve with admissible evidence.

22

The evidence from people with personal knowledge show that there was no suggestion. Defense attorney Daniel Finwall observed the identification and did not find it suggestive. *See generally* ECF No. 106-14 (deposition of Daniel Finwall). Mr. Calhoun's criminal defense attorney never challenged the identification and the Court accepted it. Dr. Dysart's testimony only seeks years later to cast doubt on the identification with no evidence other than the truism that eyewitness identification can be faulty. This opinion will only confuse the issue of this case because whether the victims were right to identify Mr. Calhoun is not at issue. Therefore, the testimony should be stricken.

## Conclusion

Plaintiff has no direct evidence that any Defendant committed an unconstitutional act in this case. Plaintiff's tactic appears to be to put on irrelevant expert witness testimony to opine generally how it is possible that an innocent person can be convicted. There is no evidence that the condom found in an alley near where B.H. was assaulted was related to the crime. The victim's DNA is not on the condom. Dr. Ballard's testimony is only meant to suggest, decades after the fact, that it is theoretically possible for the victim's DNA to be there. This

distracts from the issue of this case and should be stricken. Similarly, there is no evidence Plaintiff involuntarily waived his rights when he confessed. Dr. Sherr's testimony is only meant to suggest that innocent people can involuntarily confess. This distracts from the issue of this case and should be stricken. Lastly, there is no evidence that the identifications by the victims was done under suggestive techniques. Dr. Dysart's testimony is only meant to show that witness identifications generally are not reliable, something known for centuries. This is meant to confuse the issue and should be stricken.

Collectively, Plaintiff's purported evidence seeks to utilize the logical fallacy of *post hoc ergo propter hoc* and wants the jury to believe that if Plaintiff was convicted while allegedly innocent it must be because the Defendants did something wrong. Expert opinions "based upon nothing more than the logical fallacy of *post hoc ergo propter hoc* typically do not pass muster under *Daubert.*" *Rolen v. Hansen Beverage Co.*, 193 Fed.Appx. 468, 473 (6th Cir. 2006). This Court should apply this rule and strike the listed experts.

24

25

Respectfully submitted,

/s/ *Christopher Michels*
Christopher Michels (P83156)
City of Detroit Law Department
Attorney for Defendants

25