



←DNA Interpretation: The Prosecutor's Fallacy

Week 77 Forensic Science Geek of the Week Challenge →

# COMMINGLED DNA INTERPRETATION: DECONVOLUTION OF MIXED DNA SAMPLES

On December 15, 2011, in DNA, by Justin J. McShane

We have written here before about DNA in several posts.

In the case of mixed samples that come from true unknowns, the interpretation of the contributing source is far from an act of rigid mathematics, but truly requires interpretation. Wherever there interpretation, there is a chance of getting it wrong.

The Scientific Working Group on DNA Analysis Methods (SWG-DAM) has set up guidelines for the interpretation of mixed sample (commingled) DNA. This is all there is:

*3.4.1. For DNA mixtures, the laboratory should establish guidelines for determination of the minimum number of contributors to a sample. Alleles need not meet the stochastic threshold to be used in this assessment.*

*3.4.2. The laboratory should define the number of alleles per locus and the relative intra-locus peak height requirements for assessing whether a DNA typing result is consistent with originating from one or more sources. The minimum number of loci should be defined for determination of whether a sample is a mixture.*

*…*

*3.5. Interpretation of DNA Typing Results for Mixed Samples*

*An individual's contribution to a mixed biological sample is generally proportional to their quantitative representation within the DNA typing results. Accordingly, depending on the relative contribution of the various contributors to a mixture, the DNA typing results may potentially be further refined.*

*As an example, if a sample contains a predominance of one individual's DNA, that individual's DNA profile may be determined. This state results in a distinguishable mixture, whereby there is a distinct contrast in signal intensities (e.g., peak heights) among the different contributors' alleles. In such instances, major and/or minor contributors may be determined. Discernment of the STR typing results for the major or minor contributors to a mixture may be limited to only some loci (with the remaining loci yielding multiple potential genotypes for the major or minor contributor). The major (and possibly the minor) contributor may effectively constitute a deduced single-source profile.*

*Alternatively, if the amounts of biological material from multiple donors are similar, it may not be possible to further refine the mixture profile. When major or minor contributors cannot be distinguished because of similarity in signal intensities, the sample is considered to be an indistinguishable mixture. The classification as indistinguishable may be limited to some, not all, of the loci for which DNA typing results are obtained and does not imply that the profile is uninterpretable. Individuals may still be included or excluded as possible contributors to an indistinguishable mixture.*

*Evidence items taken directly from an intimate sample, as determined by the laboratory, are generally expected to yield DNA from the individual from whom the sample was taken. If another source of DNA is present in sufficient quantity in such a sample, a mixture of DNA is likely to be detected. Based on this expectation, any DNA typing results from such a mixture that match a conditional known sample (e.g., from the victim) may be separated from the other mixture results to facilitate identification of the foreign alleles. The obligate alleles may effectively constitute a single-source profile (i.e., if there is one DNA contributor in addition to the individual from whom the sample was taken) or a mixture profile (i.e., if there are multiple additional DNA contributors). A similar state can exist when another known individual (i.e., consensual partner) is expected to have contributed biological material to the mixed sample.*

*3.5.1. The laboratory should establish guidelines based on peak height ratio assessments for evaluating potential sharing of allelic peaks among contributors and for determining whether contributors to a mixed DNA typing result are distinguishable. When assessing peak height ratios, pair-wise comparison of all potential genotypic combinations should be evaluated.*

*3.5.2. The laboratory should define and document what, if any, assumptions are used in a particular mixture deconvolution.*

*3.5.2.1. If no assumptions are made as to the number of contributors, at a minimum, the laboratory should assign to a major contributor an allele (e.g., homozygous) or pair of alleles (e.g., heterozygous) of greater amplitude at a given locus that do not meet peak height ratio expectations with any other allelic peak(s).*

*3.5.2.2. If assumptions are made as to the number of contributors, additional information such as the number of alleles at a given locus and the relative peak heights can be used to distinguish major and minor contributors.*

*3.5.3. A laboratory may define other quantitative characteristics of mixtures (e.g., mixture ratios) to aid in further refining the contributors.*

*3.5.3.1. Differential degradation of the contributors to a mixture may impact the mixture ratio across the entire profile.*

*3.5.4. Mixtures with a Single Major Contributor and One or More Minor Contributors:*

*3.5.4.1. In general, heterozygous alleles attributed to a major contributor should meet the laboratory's established peak height ratio expectations for single-source samples. Due to the potential for overlapping peaks to cause imbalance of major heterozygous alleles, the laboratory may establish a quantitative means of evaluating the distinction in peak heights of the major and minor contributors (i.e., mixture ratio).*

*3.5.4.2. After deconvolution, the DNA typing results attributed to an individual minor contributor should also meet PHR expectations. The PHR expectations of a minor contributor may be reduced due to stochastic peak height variation and the additive effects of peak sharing (e.g., minor peak and stutter peaks).*

*3.5.4.3. Due to the possibility that the minor contributor's alleles may be shared by the major contributor (and thus masked), determination of a single genotype for a minor contributor may be possible at only some loci (while multiple allelic combinations, or allelic drop out, are possible at other loci).*

*3.5.5. Mixtures with Multiple Major Contributors and One or More Minor Contributors: The laboratory should establish guidelines based on peak height ratio assessments and/or mixture ratios for determining whether multiple major contributors are present in a mixed sample.*

*3.5.6. Mixtures with Indistinguishable Contributors: The laboratory should establish guidelines based on peak height ratio assessments for identifying mixtures for which no major or minor contributors can be discerned.*

*3.5.7. Mixtures with a Known Contributor(s): The laboratory should establish guidelines for determining whether separation of a known contributor's*

*profile is applicable (e.g., based on the types of evidentiary items).*

*3.5.7.1. At a minimum, where there is no indication of sharing of the known and obligate alleles, the laboratory should separate out those alleles attributable to the known sample (e.g., victim, consensual partner, etc.).*

*3.5.7.2. To further refine the obligate alleles in a profile, the laboratory may establish guidelines for addressing potential sharing of alleles among the individual known to have contributed to a sample and the additional contributor(s).*

*3.5.8. Interpretation of Potential Stutter Peaks in a Mixed Sample*

*3.5.8.1. For mixtures in which minor contributors are determined to be present, a peak in stutter position (generally n-4) may be determined to be 1) a stutter peak, 2) an allelic peak, or 3) indistinguishable as being either an allelic or stutter peak. This determination is based principally on the height of the peak in the stutter position and its relationship to the stutter percentage expectations established by the laboratory.*

*3.5.8.2. Generally, when the height of a peak in the stutter position exceeds the laboratory's stutter expectation for a given locus, that peak is consistent with being of allelic origin and should be designated as an allele.*

*3.5.8.3. If a peak is at or below this expectation, it is generally designated as a stutter peak. However, it should also be considered as a possible allelic peak, particularly if the peak height of the potential stutter peak(s) is consistent with (or greater than) the heights observed for any allelic peaks that are conclusively attributed (i.e., peaks in non-stutter positions) to the minor contributor(s).*

It's a whole lot of words without a lot of specific guidance. Basically, it says that a given laboratory should establish guidelines, but doesn't offer minimum levels of scientifically validated criterion. This can pose a very serious problem.

Because of the lack of minimum validated thresholds and standards in the interpretation of commingled or mixed DNA samples, then when laboratory folks attempt to deconvolute the raw data, we can end up in a situation such as the one reported by Fox 5 of Atlanta and the case of Kerry Robinson featuring the work of the Idaho Innocence Project and Dr. Greg Hampikian, PhD (geneticist).

[I-Team: The GBI and DNA: MyFoxATLANTA.com](#)

[I-Team: The GBI and DNA Pt. 2: MyFoxATLANTA.com](#)

Tags: [Commingled DNA interpretation](#), [Deconvolution of Mixed DNA samples](#), [Dr. Greg Hampikian](#), [Kerry Robinson](#), [Scientific Working Group on DNA Analysis Methods](#), [SWG-DAM](#)

About the author



# Justin J. McShane

[Harrisburg DUI attorney](#) [Justin J. McShane](#) is the President/CEO of The McShane Firm, LLC - [Pennsylvania's top criminal law and DUI law firm](#). He is the [highest rated DUI attorney in PA as rated by Avvo.com](#). Justin McShane is a double Board certified attorney. He is the first and so far the only Pennsylvania attorney to achieve American Bar Association recognized board certification in DUI defense from the National College for DUI Defense, Inc. He is also a Board Certified Criminal Trial Advocate by the National Board of Trial Advocacy, a Pennsylvania Supreme Court Approved Agency. Justin McShane is the first and so far the only Pennsylvania attorney to achieve American Bar Association recognized board certification in DUI defense from the National College for DUI Defense, Inc.

[Visit Authors Website](#)

# Leave a Reply

Your email address will not be published. Required fields are marked *

Start typing...

Name *

Email *

Website

Post Comment

---

### ABOUT THE AUTHOR



Forensics expert and [Pennsylvania DUI attorney](#) Justin J. McShane presents an ongoing forensic science reference for DUI lawyers and criminal defense attorneys.

Attorney McShane is the Chairman/CEO of The McShane Firm, [Pennsylvania's top DUI law office](#). Located in Harrisburg, PA, The McShane Firm specializes in using forensic science to defend citizens accused of a crime.

5/26/25, 2:05 PM

Commingled DNA interpretation Deconvolution of mixed DNA samples - The Truth about Forensic Science

## A B O U T   T H E   A U T H O R



Josh D. Lee is a Vinita, Oklahoma based criminal defense attorney. He is nationally recognized as a lawyer-scientist for his expertise on forensic science related topics. He has lectured well over 100 times in 18 different states.

Mr. Lee has been invited to lecture at the American Chemical Society (ACS) as well as the American Academy of Forensic Science (AAFS). In 2011, Josh was elected Forensic Science Co-Chairman for the Chemistry and the Law Division of the ACS. He is also an "Assistant Chromatography Instructor" for the ACS.

## C O N N E C T   W I T H   A T T O R N E Y   M C S H A N E



Profile on TheMcShaneFirm.com



Pennsylvania DUI Blog



Videos by Justin McShane



Justin McShane on Avvo



Justin McShane on Justia

5/26/25, 2:05 PM
Case 2:24-cv-10184-MAG-DRG ECF No. 141-7, PageID.6673 Filed 04/15/26 Page 7 of 12
Commingled DNA interpretation: Deconvolution of mixed DNA samples - The Truth About Forensic Science



Justin McShane on Super Lawyers



Justin McShane on FaceBook



Justin McShane on Google



Justin McShane on Twitter



LinkedIn Profile

## FORENSIC DISCIPLINES

Arson

Autopsy

Ballistics

Blood Spatter

Breath Testing

GC-FID & GC/MS

DNA

Enzymatic Testing

Explosive Residue

Fingerprint

Forensic Firearm and Toolmark Analysis

Infrared Spectroscopy

Odontology

Paint Analysis

Pattern Recognition

Pharmacology

Phlebotomy

SANE / Safe Nurse Examination

Solid Drug Dose

Trace Evidence

## CATEGORIES

Announcements  (55)

Chemistry  (76)

Contextual Bias  (20)

Crime Scene Investigation  (15)

Criminal Indicators  (1)

Cyber Crime  (6)

Equipment  (73)

Ethics  (182)

　　Ethics: Lawyer  (69)

　　Ethics: Scientist  (131)

Forensic Discipline  (265)

　　Arson  (14)

　　Autopsy  (2)

　　Ballistics  (5)

　　Blood Spatter  (2)

　　Breath Testing  (21)

　　Cell phone  (4)

　　Child Abuse  (1)

　　DNA  (33)

　　Enzymatic Testing  (6)

　　Explosive Residue  (15)

　　Eyewitness Identification  (3)

　　Fingerprint  (9)

　　Forensic Firearm and Toolmark Analysis  (4)

　　GC-FID & GC/MS  (72)

　　Handwriting Analysis  (1)

　　Infrared Spectroscopy  (6)

　　Odontology  (1)

　　Paint Analysis  (1)

　　Pattern Recognition  (7)

　　Pharmacology  (29)

　　Phlebotomy  (6)

　　SANE / Safe Nurse Examination  (3)

　　Solid Drug Dose  (39)

　　Trace Evidence  (21)

　　Voice Stress Analysis  (1)

General Information  (64)

Identification  (71)

In The Courtroom  (118)

Lab Scandals & Failures  (43)

Laboratory Procedure  (75)

Lectures  (22)

Metrology  (39)

Pathology  (2)

Standards  (28)

Uncategorized  (17)

www.TheTruthAboutForensicScience.com Forensic Science Geek of the Week  (212)

Case 2:24-cv-10184-MAG-DRG ECF No. 141-7, PageID.6676 Filed 04/15/26 Page 10 of 12

## BLOG AWARDS



## PROFESSIONAL ASSOCIATIONS



Go To Top »



# Blogroll

🔵 The McShane Firm | DUI Lawyers

🖼️ Pennsylvania DUI Blog

Forensic Magazine

University of Florida Forensic Science Blog

Wiley InterScience : Journal of Forensic Sciences

Forensic Science International

FSN: Forensic Science News





Home     About     Sitemap

©2025 The McShane Firm, LLC - Law Offices. All Rights Reserved.

This site is powered by  brandilizer